IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

| | |
|---|---|
| CHRISTOPHER E. METCALF, | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | *   No. 4:10-cv-01968-SWW |
| | * |
| | * |
| | * |
| MICHAEL J. ASTRUE, Commissioner | * |
| of Social Security, | * |
| | * |
| Defendant. | * |

OPINION AND ORDER

Plaintiff Christopher E. Metcalf seeks judicial review of the final decision of the Commissioner of the Social Security Administration to deny his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). For the reasons stated below, the Court affirms the Commissioner's decision.

I.

Plaintiff was born on August 7, 1985, and is a high school graduate. Tr. 20, 33-34. He has past relevant work as an equipment operator. Tr. 20, 42-43, 52, 139.

Plaintiff applied for DIB and SSI on July 2, 2008, alleging an inability to work since January 1, 2008, due to epilepsy, visual impairment, and stomach ulcers. Tr. 13, 60-74, 109-119, 138.[1] Plaintiff was 22 years old at the time of his alleged disability onset date. Tr. 20.

Plaintiff's applications were denied administratively. Pursuant to Plaintiff's request, a hearing was held before an administrative law judge (ALJ) on September 9, 2009, at which

---

[1] Plaintiff had a prior application denied in 2003. Tr. 134.

testimony was received from Plaintiff (who was represented by counsel), Jessica Metcalf, Plaintiff's wife, and David A. O'Neal, a Vocational Expert (VE).  Tr. 13, 29-59.

The ALJ rendered his decision on February 25, 2010.  The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work[2]; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).  See also *Jones v. Astrue*, 619 F.3d 963, 967 (8th Cir. 2010).[3]

At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2008.  Tr. 15.  At the second step, the ALJ found that Plaintiff had the following severe impairments: epilepsy, visual impairment, and anxiety.  Tr. 15.  At the third step, the ALJ found that Plaintiff's impairments did not meet or equal a listed impairment for presumptive disability under the regulations.  Tr. 16.

The ALJ next found that Plaintiff's subjective allegations were not fully credible to the

---

[2] If it is determined at step four that the claimant has sufficient residual functional capacity to perform past relevant work, the inquiry ends and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[3] At step five, the burden of production shifts to the Commissioner to prove that the claimant retains the residual functional capacity to do other kinds of work and that other work exists in substantial numbers in the national economy that the claimant can perform given his residual functional capacity. *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005).  However, the ultimate burden of persuasion to prove disability and to demonstrate residual functional capacity remains on the claimant, even when the burden of production shifts to the Commissioner at step five. *Id.*

extent alleged. Tr. 18. In this respect, the ALJ found that Plaintiff's longitudinal medical history was not necessarily consistent with his allegation of disability, citing a perceived lack of treatment for Plaintiff's seizures and a collar bone (or clavicle) injury, and noted that an ophthalmologist acknowledged that Plaintiff had a severe visual impairment but recommended surgery to repair a detached retina which could salvage some vision in his right eye. Tr. 18-19.

The ALJ also found that Plaintiff retained the residual functional capacity to perform light work with restrictions. Tr. 17. Specifically, the ALJ found that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, sit for about six hours out of an eight-hour workday and stand and walk for about six hours out of an eight-hour work day, and perform work that does not require high far visual acuity. Tr. 17. The ALJ determined that Plaintiff can have no exposure to extreme heat or hazzards, such as unprotected heights or heavy machinery, and that he cannot drive, and that Plaintiff was able to understand, remember, and carry out simple, routine, and repetitive tasks and is able to respond appropriately to supervisors, co-workers, the general public, and usual work situations. Tr. 17. Based on this residual functional capacity, the ALJ found at step four that Plaintiff was not able to perform his past relevant work as an equipment operator. Tr. 20.

At step five, the ALJ, with the assistance of VE testimony, found that jobs existed in significant numbers in the national and state economy that Plaintiff could perform given his residual functional capacity. Tr. 21, 53-54. As examples of such work, the VE cited the light exertional level unskilled jobs of poultry de-boner and poultry eviscerater with 205,000 positions in the national economy and 1,800 jobs statewide, fast food worker with 2,000,000 positions in the national economy and 14,000 jobs statewide, and cashier with 1,800,000 positions in the

national economy and 17,000 jobs statewide. Tr. 21, 54. Therefore, the ALJ found Plaintiff not disabled at any time through the date of the decision. Tr. 21-22.[4]

Following the ALJ's decision, Plaintiff retained new counsel and appealed the ALJ's decision to the Social Security Administration's Appeals Council. Tr. 8. On October 1, 2010, the Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's decision as the Commissioner's final administrative decision for purposes of judicial review. Tr. 1-4. Plaintiff thereafter filed this action seeking judicial review of the final decision of the Commissioner to deny his claim for DIB and SSI.

II.

Plaintiff argues for reversal of the Commissioner's decision on the following grounds: (1) the ALJ erred in addressing the credibility of Plaintiff's subjective complaints; (2) the ALJ's residual functional capacity assessment is not supported by substantial evidence on the record as a whole and is based on legal error; and (3) the ALJ failed to fully and fairly develop the record.

A.

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Slusser v. Astrue,* 557 F.3d 923, 925 (8th Cir. 2009). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue,* 480 F.3d 885, 886 (8th Cir. 2007). In reviewing the record as a whole, the Court must consider both the evidence that detracts from the Commissioner's decision as well as the evidence that supports the decision, but the decision cannot be reversed simply because some evidence may support the opposite conclusion.

---

[4] The ALJ noted that Plaintiff was only insured for DIB purposes through September 30, 2008 and that Plaintiff had to establish disability on or before that date to qualify for DIB. Tr. 13, 15.

*Medhaug v. Astrue,* 578 F.3d 805, 813 (8th Cir. 2009).

B.

1.

The Court first addresses Plaintiff's argument that the ALJ erred in addressing the credibility of his subjective complaints. Plaintiff argues that two grounds given by the ALJ for discrediting Plaintiff's subjective complaints–that Plaintiff's longitudinal medical history was not necessarily consistent with his allegation of disability, citing a perceived lack of treatment for Plaintiff's seizures and a collar bone injury, and that Plaintiff's vision might be improved by surgery for retinal detachment–do not provide good reasons to discredit the severity of Plaintiff's subjective complaints and are not based on substantial evidence in the record as a whole. The Court disagrees.

Concerning his allegations of seizures, Plaintiff argues that the ALJ only relied on evidence outside the relevant period and that the ALJ erred in giving this perceived lack of treatment outside the relevant time period too much weight. This argument provides no basis for discounting the ALJ's findings, however, as the ALJ in any case accounted for Plaintiff's limitations in his residual functional capacity assessment as a result of Plaintiff's allegations of seizures by prohibiting him from exposure to extreme heat, driving, and unprotected heights or heavy machinery. Tr. 17, 20. The ALJ, then, essentially assumed the veracity of Plaintiff's allegations of seizures and factored those allegations into his residual functional capacity assessment.

Plaintiff also argues that the ALJ did not consider his complaints of collar bone pain from August and September of 2008. The Court notes, however, that despite those allegations of

collar bone pain, a subsequent November 2008 x-ray showed no acute injury of the clavicle, Tr. 361, and no doctor concluded that Plaintiff was disabled or imposed any work related restrictions. See *Pelkey v. Barnhart*, 433 F.3d 575, 579 (8th Cir. 2006) (no physician indicated Plaintiff was precluded from all work). Indeed, treating sources noted that Plaintiff had normal musculoskeletal function, a smooth coordinated gait, an improving or healing clavicle fracture, normal extremities and cerebellar function, and the ability to move around without assistance. Tr. 202, 225, 228, 268, 276. Plaintiff also reported that he fed the animals (dogs and pigs), mowed the yard, played with his four year old daughter, "fish[ed] every now and then," threw out the trash, and was able to groom and bathe himself. Tr. 18, 42, 45, 153, 157-158. See *Leckenby v. Astrue*, 487 F.3d 626, 634 (8th Cir. 2007) (an ALJ may give consideration to the quality of daily activities, the ability to sustain activities, and the frequency, appropriateness, and independence of activities). In addition, Plaintiff acknowledged that he used no assistive devices such as canes, crutches, splints, braces, or walkers. Tr. 34. The ALJ may properly discount the claimant's testimony where it is inconsistent with the record, see *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004), and the Court cannot say that the ALJ improperly weighed the credibility of Plaintiff's subjective complaints.

Plaintiff also argues that the ALJ placed too much weight on a consultative visual examination by Dr. Blake N. Geren to conclude that surgery would greatly improve Plaintiff's vision. The Court notes, however, that Plaintiff himself testified that surgery in his left eye would improve his vision for up to ten years at a time. Tr. 37, 41. But even discounting that testimony, the ALJ accounted for Plaintiff's limitations in his residual functional capacity assessment as a result of Plaintiff's impaired vision by restricting Plaintiff to work that required

no far high visual acuity and he found work in the national economy that Plaintiff could perform with that restriction. Tr. 17, 21. The ALJ, then, essentially assumed the veracity of the evidence of Plaintiff's visual impairment and factored that evidence into his residual functional capacity assessment.

In sum, the Court has considered the record and cannot say that the ALJ improperly weighed the credibility of Plaintiff's subjective complaints. Courts defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence, *Pelkey*, 433 F.3d at 578, and the Court finds in this case that the ALJ's credibility determinations are in fact supported by good reasons and substantial evidence.

2.

The Court next addresses Plaintiff's argument that the ALJ's residual functional capacity assessment is not supported by substantial evidence on the record as a whole and is based on legal error. As was the case with the ALJ's credibility determinations, the Court finds that Plaintiff's medical evidence, daily activities, and testimony also supports the ALJ's residual functional capacity finding. Tr. 15-20.[5]

At the hearing level, the responsibility for determining Plaintiff's residual functional capacity rests with the ALJ. See, *e.g.*, *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

---

[5] As previously noted, the ALJ found that Plaintiff retained the residual functional capacity to perform light work with restrictions. Tr. 17. The ALJ found that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, sit for about six hours out of an eight-hour workday and stand and walk for about six hours out of an eight-hour work day, and perform work that does not require high far visual acuity. Tr. 17. The ALJ further determined that Plaintiff can have no exposure to extreme heat or hazzards, such as unprotected heights or heavy machinery, and that he cannot drive, and that Plaintiff was able to understand, remember, and carry out simple, routine, and repetitive tasks and is able to respond appropriately to supervisors, co-workers, the general public, and usual work situations. Tr. 17.

The ALJ determines a claimant's residual functional capacity based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations.  *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005).

Plaintiff first argues that the ALJ's determination that Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently is not supported by Plaintiff's testimony, namely his testimony that because of his collar bone injury it hurts him "to even pick up a gallon of milk and put it in the refrigerator." Tr. 38.  As previously noted, however, a November 2008 x-ray showed no acute injury of the clavicle, no doctor concluded that Plaintiff was disabled or imposed any work related restrictions, treating sources noted that Plaintiff had normal musculoskeletal function, an improving or healing clavicle fracture, normal extremities, and the ability to move around without assistance, and Plaintiff reported that he fed the animals, mowed the yard, played with his four year old daughter, fished every now and then, threw out the trash, was able to groom and bathe himself, and used no assistive devices such as canes, crutches, splints, braces, or walkers.  See *Leckenby*, 487 F.3d at 634 (an ALJ may give consideration to the quality of daily activities, the ability to sustain activities, and the frequency, appropriateness, and independence of activities).  The ALJ may properly discount the claimant's testimony where it is inconsistent with the record, see *Eichelberger*, 390 F.3d at 590, and the Court finds that the ALJ's determination that Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently is supported by substantial evidence.

Plaintiff next argues that the ALJ did not give consideration to an August 2008 seizure report or to his wife's testimony with respect to seizures.  The August 2008 seizure report did state that Plaintiff had seizures weekly, Tr. 272, and Plaintiff's wife testified to the debilitating

nature of Plaintiff's seizures. Tr. 47-50. However, the August 2008 report and Plaintiff's wife's testimony are conclusory with no documentation of objective medical evidence in support. Tr. 47-50, 272-73. A conclusory statement will not support a finding of disability. See *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). But even if the seizure evidence was supported by objective evidence, the ALJ in any case accounted for Plaintiff's limitations in his residual functional capacity assessment as a result of Plaintiff's allegations of seizures by prohibiting him from exposure to extreme heat, driving, and unprotected heights or heavy machinery. Tr. 17, 20. The ALJ, then, essentially assumed the veracity of Plaintiff's allegations of seizures and factored those allegations into his residual functional capacity assessment.

Plaintiff next argues that the ALJ did not consider Plaintiff's diagnoses of generalized anxiety disorder. While Plaintiff correctly asserts he was diagnosed with anxiety, no doctor imposed any work-related restrictions or rendered him permanently disabled due to that condition. See *Pelkey*, 433 F.3d at 578. In this respect, the ALJ correctly noted that Plaintiff reported that he visited friends and family and got along well with family, friends, neighbors, and others. Tr. 16, 157-158. Such evidence supports the ALJ's residual functional capacity findings. Plaintiff next argues that the ALJ did not consider that he had difficulty following television programs and, thus, is not able to concentrate. Plaintiff's argument lacks merit, however, as the ALJ limited Plaintiff to simple, routine, and repetitive work, thereby accounting for any concentration limitations. Tr. 17. The ALJ, then, essentially assumed the veracity of Plaintiff's allegations of not being able to concentrate and factored those allegations into his residual functional capacity assessment.

Finally, Plaintiff argues that his visual impairment precludes him from all of the jobs that

the ALJ found he could perform at step five because a state agency physician found that he should avoid work that requires excellent vision. This argument fails, however, as the ALJ limited Plaintiff to work that did not require high far visual acuity, which comports with the state agency physician's conclusion that Plaintiff should avoid work that required excellent vision. Tr. 17. Moreover, in response to Plaintiff's counsel's cross examination, the VE testified that even if Plaintiff had no near visual acuity in addition to no high far acuity, he would continue to be able to perform the job of poultry deboner. Tr. 58.

In sum, the Court finds that substantial evidence in the record supports the ALJ's determination that plaintiff retained the residual functional capacity to perform light work with restrictions and that jobs existed in significant numbers in the national and state economy that Plaintiff could perform given his residual functional capacity.

3.

Finally, the Court addresses Plaintiff's argument that the ALJ failed to order a consultative examination and thereby failed to fully and fairly develop the record. An ALJ may order consultative examinations only if the available evidence does not provide an adequate basis for determining the merits of a disability claim, see *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004), and the Court finds in this case that the ALJ fully and fairly developed the record and was not required to order consultative examinations. The medical records clearly show that Plaintiff had normal musculoskeletal function, a smooth coordinated gait, an improving or healing clavicle fracture, normal extremities and cerebellar function, and the ability to move around without assistance. Tr. 202, 225, 228, 268, 276. No doctor concluded that Plaintiff was disabled, see *Pelkey*, 433 F.3d at 578, and that fact coupled with Plaintiff's daily activities and

testimony provided an adequate basis for the ALJ's findings.

Plaintiff bears a heavy burden in showing the record has been inadequately developed; he must show both a failure to develop necessary evidence and unfairness or prejudice from that failure. *Combs v. Astrue*, 243 Fed.Appx. 200, 204 (8th Cir. 2007) (citing *Haley v. Massanari*, 258 F.3d 742, 749-750 (8th Cir. 2001)). Plaintiff did not meet his burden.

### III.

It is not the task of this Court to review the evidence and make an independent decision. *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992). Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. *Id*. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Id*. The Court finds for the foregoing reasons that there is substantial evidence in the record as a whole which supports the decision of the ALJ. Accordingly, the Court affirms the final determination of the Commissioner and dismisses Plaintiff's complaint with prejudice. Judgment will be entered accordingly.

IT IS SO ORDERED this 16th day of March 2012.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE